1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

  v.

ETHAN FARID JINIAN,

          Defendant.

_____/

No. CR 09-1103 JSW

**ORDER DENYING MOTIONS
FOR JUDGMENT OF
ACQUITTAL FOR NEW TRIAL**

**INTRODUCTION**

      This matter comes before the Court upon consideration of the Motion for Judgment of Acquittal and the Motion for a New Trial filed by Defendant Ethan Farid Jinian ("Jinian"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and has had the benefit of oral argument. For the reasons set forth in the remainder of this Order, the Court HEREBY DENIES the motion for a judgment of acquittal, DENIES the motion for a new trial, and DENIES the request for relief under Federal Rule of Criminal Procedure 34.

**BACKGROUND**

      On November 12, 2009, the Government filed the original indictment in this case. On April 26, 2011, the Government filed a Superseding Indictment, in which the Government charged Jinian with fourteen counts of wire fraud. (Docket Nos. 1, 253.) The charges were based on allegations that Jinian engaged in a scheme to defraud his former employer, Bricsnet FM America, Inc. ("Bricsnet"). Pursuant to that scheme, Jinian induced Bricsnet to issue wire transfers and checks to him for funds to which he was not entitled. Jinian then deposited the

1  funds, which were issued from Bricsnet's account at the Silicon Valley Bank, into his bank

2  account at Mechanics Bank, which are both located in the Northern District of California.

3        Howard Ng, an employee of the Federal Reserve Bank, testified that, in order to process

4  the checks, Mechanics Bank sent electronic images of the checks to the "San Francisco district"

5  office of the Federal Reserve Bank.  According to Mr. Ng, however, "[a]ll of the checks" sent to

6  the Federal Reserve Bank "get processed out of the server in Dallas," Texas.[1]  From there, the

7  Federal Reserve Bank either sends a physical copy of the check or an electronic image of the

8  check to Silicon Valley Bank so that the check can be paid.  (*See* Declaration of Ethan Balogh

9  ("Balogh Decl."), Ex. A (Trial Transcript, May 17, 2011 ("5/17/11 Tr."), Testimony of Howard

10 Ng ("Ng Testimony"), at 2:12, 2:20-24, 5:9-20, 9:4-12, 9:18-23, 9:24-12:11, 13:18-21, 20:9-22,

11 21:12-15); *see also* Trial Exhibit ("TX") 16.)

12       On May 25, 2011, a jury convicted Jinian on thirteen of fourteen counts.  Jinian now

13 moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, for a new

14 trial pursuant to Rule 33, and for arrest of judgment pursuant to Rule 34.  The Court shall

15 address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

16

17 **A.    Motion for Arrest of Judgment.**

18       Rule 34 provides that "[u]on the defendant's motion or on its own, the court must arrest

19 judgment if: (1) the indictment or information does not charge an offense; or(2) the court does

20 not have jurisdiction of the charged offense."  Fed. R. Crim. P. 34(a).  Pursuant to Rule 34(b), a

21 defendant must move for arrest of judgment within fourteen days after a court accepts a guilty

22 verdict.  The Court granted Jinian an extension of time to file post-trial motions until July 21,

23 2011.  Jinian did not, however, assert Rule 34 as a basis for relief in either of his opening briefs,

24 and his motion is untimely.  The Court denies it on that basis.

25

26

27       [1]    The original indictment alleged that Jinian caused wire communications to be transmitted from Mechanics Bank to Silicon Valley Bank, via Dallas, Texas.  In the Superseding Indictment, the Government alleged that Jinian caused wire communications to

28 be transmitted from Mechanics Bank to the Federal Reserve Bank, in Dallas, Texas. (*Compare* Docket No. 1 *with* Docket No. 233.)

United States District Court
For the Northern District of California

Even if the Court were to consider this issue "own its own motion," it would still deny the motion. A court must decide a Rule 34 motion based on the indictment, the plea and the verdict, rather than the evidence. *See United States v. Sisson*, 399 U.S. 267, 281 (1970) ("a judgment can be arrested only on the basis of error appearing on the 'face of the record,' and not on the basis of proof offered at trial"); *United States v. Guthrie*, 814 F. Supp. 942, 944 (E.D. Wash. 1993) ("A Rule 34 motion for arrest of judgment, ..., must be decided on the record alone, that is, on the indictment, plea, and verdict. The evidence is not within the record. ... Challenges to the sufficiency of the evidence are not proper under Rule 34.") (citations omitted).

Jinian's arguments regarding the Court's jurisdiction over the alleged offenses are premised on the nature of the evidence adduced at trial and, thus, are not the proper subject of a Rule 34 motion. The Court shall address those arguments in the remainder of this Order. The Court also has reviewed and considered the allegations of the Superseding Indictment and is satisfied that, on its face, it charges each of the essential elements of a violation of 18 U.S.C. § 1343. In addition, the Court has jurisdiction over an alleged violation of 18 U.S.C. § 1343. *See* 18 U.S.C. § 3231. Thus, based on the allegations in the Superseding Indictment, Jinian is not entitled to relief on the basis that the Court lacks jurisdiction over the offense. Fed. R. Crim. P. 34(a)(2).

For each of these reasons, the Court concludes that Jinian is not entitled to relief under Rule 34.

**B.      Motion for Judgment of Acquittal.**

Jinian raises five arguments in support of his motion for judgment of acquittal: (1) the alleged wire communications occurred after the fact and, thus, were not in furtherance of the scheme to defraud; (2) the Government failed to prove Jinian had the requisite *mens rea* regarding the use of interstate wires[2]; (3) Congress did not intend such a "flimsy jurisdictional basis" to satisfy 18 U.S.C. § 1343, and, thus, there was insufficient evidence to satisfy the

---

[2]      Prior to trial, Jinian framed this argument as a dispute over what facts were necessary to prove that he caused a wire to be transmitted in interstate commerce. (*See, e.g.,* Docket No. 148 (Memorandum of Law regarding disputed Instructions 44 and 45 at 2:24).)

United States District Court

For the Northern District of California

3

1   jurisdictional element; (4) Section 1343 is unconstitutional as applied to the facts; and (5) there

2   is insufficient evidence of a wire communication.  The Government asserts that most of these

3   arguments are not the proper subject of a Rule 29 motion.

    The Court agrees, in part, with the Government.  Jinian renews his argument that the

5   Government was required to prove he knew, or knew that it was reasonably likely, that

6   *interstate* wires would be used to further the fraudulent scheme.  According to Jinian there is no

7   evidence that he had the requisite knowledge.  Because the sufficiency of the evidence depends

8   on whether the Court agrees with Jinian on his interpretation of the wire fraud statute, the Court

9   concludes that this argument is better addressed in the context of Jinian's motion for a new

10  trial.[3]

11          **1.      Applicable Legal Standard for a Rule 29 Motion.**

12          "A defendant may move for a judgment of acquittal, or renew such a motion, within 14

13  days after a guilty verdict or after the court discharges the jury, whichever is later."  Fed. R.

14  Crim. P. 29(c)(1).  "It is well settled that a district court does not have unlimited discretion in

15  resolving a Rule 29(c) motion for judgment of acquittal."  *United States v. Dreitzler*, 577 F.2d

16  539, 545 (9th Cir. 1978).  "[T]he relevant question is whether, after viewing the evidence in the

17  light most favorable to the prosecution, *any* rational trier of fact could have found the essential

18  elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319

19  (1979) (emphasis in original); *see also United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir.

20  2009).  Further, a court must remember that it the "exclusive function of the jury to determine

21

22

23          [3]      Jinian himself suggests that this argument is best addressed in the context of
    his motion for a new trial.  (*See* Docket No. 294, Motion for Judgment of Acquittal
24  ("MJOA") at 7:21-23 ("At the very least, this Court must grant a new trial because it failed
    to instruct the jury as requested by Mr. Jinian – a request that should have been granted
25  under" *Fowler v. United States*, 131 S. Ct. 2045 (2011)).  Jinian does argue that under *his*
    interpretation of Section 1343, the evidence was insufficient, but he does not suggest that
26  under the Government's interpretation the evidence was insufficient.  The Court concludes
    that, viewing the evidence in the light most favorable to the Government, a rational jury
27  would be used in connection with the check clearing process.  *See United States v. Garlick*,
    240 F.3d 789, 794 (9th Cir. 2001) ("'One causes use of ... wire communications where such
28  use can be reasonably foreseen, even thought not specifically intended.'") (quoting *United
    States v. Cusino*, 694 F.2d 185, 188 (9th Cir. 1982)).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from

2   proven facts." *Dreitzler*, 577 F.2d at 545 (internal quotations and citations omitted).

3   **2.      The Court Denies Jinian's Motion for Judgment of Acquittal.**

4   "The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of

5   wire, radio, or television to further the scheme; and (3) specific intent to defraud." *United*

6   *States v. Pelisamen*, 641 F.3d 399, 409 & n.7 (9th Cir. 2011); *Garlick*, 240 F.3d at 792; *see also*

7   18 U.S.C. § 1343.  "[E]ach use of the wires is a separate offense, 'notwithstanding the fact that

8   the defendant may have been engaged in one fraudulent scheme.'" *Garlick*, 240 F.3d at 795

9   (quoting *United States v. Calvert*, 523 F.2d 895, 914 (8th Circ. 1975) and citing *Nelson v.*

10  *United States*, 178 F.2d 458, 458-59 (9th Cir. 1943)).

11          **a.      There was sufficient evidence for a rational juror to conclude
                      Jinian's use of the wires was in furtherance of the fraudulent scheme.**

12

13          Jinian renews his argument that the evidence at trial showed that each of the wire

14  communications occurred after the funds he obtained from Bricsnet had been credited to his

15  bank account.[4]  According to Jinian, this fact would preclude a rational juror from concluding

16  that he used, or caused to be used, wire communications in furtherance of the scheme to defraud

17  Bricsnet.  It is well established that use of the wires need not be an "essential element of the

18  scheme" to defraud.  *Schmuck v. United States*, 489 U.S. 705, 711 (1989).  Rather, it is

19  sufficient if a defendant's use of the wires is "'incident to an essential part of the scheme,'" or is

20  a "'step in the plot.'"  *Id.* (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916); *see also*

21  *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004).[5]  The Ninth Circuit has made clear

22  that use of the wires is "not one purely of time sequence," and a wiring can occur after a

23  defendant has obtained funds, "if 'the [wiring] is part of the execution of the scheme as

24

25          [4]      According to the evidence Jinian presented, each check charged in the
            Superseding Indictment was credited to Jinian's account at least one day before the Federal
26          Reserve Bank processed it.  (*See* Docket No. 257 (Stipulations of Fact); TX 245.)

27          [5]      Because the mail fraud and wire fraud statutes share identical language, courts
            interpret the wire fraud statute in light of case law interpreting the mail fraud statute.  *See*
28          *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987); *United States v. Louderman,* 576
            F.2d 1383, 1387 n.3 (9th Cir. 1978).

**United States District Court**
For the Northern District of California

1    conceived by the perpetrator at the time.'"  *United States v. Lo*, 231 F.3d 471, 478 (9th Cir.

2    2000) (quoting *Schmuck*, 489 U.S. at 715).

3         Jinian relies on this Court's opinion in *TEG Staffing v. Platt*, 2008 WL 4571257 (N.D.

4    Cal. Oct. 14, 2008) as support for his argument.  In the *TEG Staffing* case, the defendant

5    allegedly obtained funds from the plaintiff and, after she obtained those funds, mailed them to

6    her parents in New Mexico.  This court granted defendant's motion to dismiss a civil RICO

7    claim on the basis that the plaintiff failed to allege a violation of the mail fraud statute, because

8    the mailings occurred "after the consummation of the fraudulent scheme's objective."  The

9    Court noted that the Supreme Court has "recognized two exceptions to the general rule

10   restricting liability" to use of the mails after a defendant has obtained funds, the "lulling

11   scheme" and an "on-going" scheme.  This Court concluded the facts alleged did not establish

12   that the use of the mails "lulled" the victim into a false sense of security.  *Id.*, 2008 WL

13   4571257 at *3-4.  Similarly, the allegations suggested that, even if the scheme were on-going,

14   by the time the defendant mailed the funds to New Mexico, the funds were irrevocably in her

15   possession and, thus, mailing funds to her parents did not contribute to the success of the

16   fraudulent scheme.  Rather, the Court concluded that the allegations demonstrated that the fraud

17   reached fruition well before she utilized the mails.  *Id.*, 2008 WL 4571257, at *3 (citing *Kann v.*

18   *United States*, 323 U.S. 88, 94 (1944)).

19        Jinian also relies heavily on *Kann*.  In that case, the defendants, corporate officers and

20   directors, set up a dummy corporation in order to divert profits from the corporation for whom

21   they worked.  The defendants caused the corporation to issue checks to them, which they then

22   cashed.  Although the bank that cashed the checks mailed the checks to the bank on which they

23   were drawn, the Supreme Court held that the mailing was not in furtherance of the fraudulent

24   scheme.  The Court reasoned that, by the time the checks had been mailed, "[t]he fraudulent

25   scheme had reached fruition.  The persons intended to receive the money had received it

26   irrevocably.  It was immaterial to them, or to any consummation of the scheme, how the bank

27   which paid or credited the check would collect from the drawee bank."  *Kann*, 323 U.S. at 94.

28   However, the Supreme Court also left open the possibility that "in some settings" the "mere

6

United States District Court

For the Northern District of California

clearing of a check" might be enough to establish that a defendant used the mails in furtherance of a fraudulent scheme. *Id.*, 323 U.S. at 95. The Court finds that this is such a case.

Whether one views Jinian's conduct as a series of individual schemes or as an "ongoing" scheme, and even if Jinian's account at Mechanics Bank had been credited with the ill-gotten funds, until the checks actually cleared, Jinian's scheme had not reached fruition, because the funds were not irrevocably in his possession. (Balogh Decl., Ex. A (Ng Testimony at 4:1-8, 4:20-5:8, 8:20-9:2, 11:15-12:11).) *See, e.g., United States v. Franks*, 309 F.3d 977, 978 (7th Cir. 2002) (distinguishing *Kann* on basis that it pre-dated introduction of Uniform Commercial Code, which "made it easier for a customer's bank to reverse the credit if the instrument cannot be collected"); *United States v. Powell,* 576 F.3d 482, 494 (7th Cir. 2009) (following *Franks* and concluding that rational jury could have concluded that fraud was not complete until wire transfer complete and funds were "irrevocably" in defendants' possession); *cf. United States v. Keller*, 2008 WL 2120022, at *2-4 (E.D. Pa. May 19, 2008), *aff'd* 395 Fed. Appx. 912, 2010 WL 373372 (3rd Cir. Sept. 27, 2010), *cert denied*, 131 S.Ct. 3077 (2011).

Accordingly, viewing the evidence in the light most favorable to the Government, the Court concludes that a rational jury could have concluded that the process by which the checks were cleared was incident to an essential part of or a step in the plot of Jinian's scheme.

### b.    There is sufficient evidence of a wire communication.

Jinian also argues that there is insufficient evidence of a "wire communication." Jinian relies on the definition of wire communication set forth in 18 U.S.C. § 2510(1) to argue that a wire communication requires an "aural transfer," *i.e.,* "a transfer containing the human voice at any point between and including the point of origin and the point of reception." *See* 18 U.S.C §§ 2510(1), 2150(18). According to Jinian, because the check images in this case could not constitute an "aural transfer," there was insufficient evidence of a "wire communication."[6]

---

[6]      Jinian never argued that the Court should define the term "wire communication" in this fashion for the jury. As the Government correctly notes, "a Rule 29 motion challenging the sufficiency of the evidence cannot substitute as a timely objection to the jury instructions." *United States v. Moreland*, 622 F.3d 1147, 1166 (9th Cir. 2010). Jinian argues, however, that he is not challenging the jury instructions but is relying on this definition to guide the Court in determining whether the evidence is sufficient. (*See* Docket

United States District Court

For the Northern District of California

Jinian's proposed definition of wire communication is unduly restrictive and contrary to existing Ninth Circuit precedent.

Mr. Ng testified that, in order to process the checks, electronic images were sent from Mechanics Bank to the Federal Reserve Bank's server in Dallas.  Viewing the evidence in the light most favorable to the prosecution, a rational jury could find that this was accomplished by means of a wire communication.  *See, e.g., United States v. Selby*, 557 F.3d 968, 978-79 (9th Cir. 2009) (concluding evidence sufficient to show use of wires based on email that defendant forwarded to her husband); *Garlick*, 240 F.3d at 794-95 (upholding wire fraud conviction based on use of facsimile transmission); *see also United States v. Dowie*, 411 Fed. App. 21, 2010 WL 4904309, at *1 (9th Cir. Dec. 2, 2010) (concluding evidence sufficient for wire fraud conviction based on use of email in furtherance of the fraudulent scheme).

### c.    The "in interstate commerce" argument.[7]

Jinian also contends that the evidence is not sufficient to show the "in interstate commerce" element of the offense.  It is well established that both the mail and wire fraud statutes "do not purport to reach all frauds, but only those limited instances in which the use of the mails" or wires "is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law."  *Kann*, 323 U.S. at 95.  Jinian argues that Congress could not have intended that the Government could satisfy the "interstate commerce" element of Section 1343 by what he argues is an "unforseen 'ping' off a server in another state."  (MJOA at 8:4-6.)  Jinian argues that the Court should interpret Section 1343 "to prevent ... a distortion of the federal-state balance, and ... conclude that the jurisdictional element of the offense was not satisfied in this case."  (*Id.* at 8:6-9, citing *Jones v. United States*, 529 U.S. 848 (2000)).

No. 313, MJOA Reply Br. at 10:20-11:10.)

[7]    Jinian did not move to dismiss either the original Indictment or the Superseding Indictment for lack of jurisdiction at any time prior to trial.  However, Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense...."  Accordingly, the Court concludes it is appropriate to address this argument and shall not consider it untimely.

United States District Court

For the Northern District of California

1    In *Jones*, the Supreme Court held that the federal arson statute, 18 U.S.C. § 844(i), "does

2  not reach an owner-occupied residence that is not used for any commercial purpose." *Jones*,

3  529 U.S. at 852.  The Supreme Court reasoned although the statute does not exclude any

4  "particular type of building ... [it] does require that the building be 'used' in an activity

5  affecting commerce.  That qualification is most sensibly read to mean active employment for

6  commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.*

7  at 855.  The Court also noted that if it were "to adopt the Government's expansive interpretation

8  of § 844(i), hardly a building in the land would fall outside the federal statue's domain." *Id.*

9  Jinian argues that the same is true in this case and that "virtually any fraud that involves

10  depositing a check ... would constitute a federal crime."  (MJOA at 7:28-8:2.)

11    The Court does not find Jinian's reliance on *Jones* persuasive.  The Supreme Court has

12  "identified three broad categories of activity that Congress may regulate under its commerce

13  power[:]" (1) channels of interstate commerce; (2) instrumentalities of interstate commerce; and

14  (3) activities that substantially affect interstate commerce.  *United States v. Lopez*, 514 U.S.

15  549, 558-59 (1995).  Section 1343 falls within the second *Lopez* category and "by [its] terms,

16  protect[s] the instrumentalities of communication, making the *use* of the mails or wires as part

17  of a fraudulent scheme an independent offense..." *Garlick*, 240 F.3d at 792 (emphasis in

18  original).  As set forth above, although the Government need not show a defendant intended to

19  use a wire in interstate commerce, it must establish that the defendant did so as a "step in the

20  plot" or as "incident to an essential part of the scheme," *i.e.* that the wire communication is

21  "part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck*, 489

22  U.S. at 715.  Those requirements serve to ensure a proper balance between the prosecution of

23  state and federal crime.

24    The Court has concluded that, taking the facts in the light most favorable to the

25  Government, a rational jury could conclude that the wire communications in this case were part

26  of the execution of Jinian's fraudulent scheme.  In addition, the jury was instructed that "[a]

27  wire fraud involves the use of wire [*sic*] in interstate commerce.  An interstate wire

28  communication includes a wire transmission so long as it goes across a state line."  (Docket No.

275 (Final Jury Instructions at 15:23-24).)  *Cf. Federal Jury Practice and Instructions* § 47:08 (defining to "transmit by means of wire ... in interstate commerce" as "to send from one state to another by means of telephone or telegraph lines").

Mr. Ng's testimony established that, in order to clear the checks, wire communications were sent from California to Texas and back to California.  Thus, there was sufficient evidence for a rational jury to conclude that the wire communications crossed state lines.

### d.    The "as applied" argument.

Jinian also argues that, if the Court concludes that the facts established at trial are sufficient to convict him for a violation of Section 1343, which it has, then the Court must find that Section 1343 is unconstitutional as applied.  Specifically, Jinian argues that application of Section 1343 in this manner would violate the Necessary and Proper Clause.  U.S. Const., Art. I, § 8, cl. 18.  In support of this argument, Jinian relies on *United States v. Comstock*, 130 S.Ct. 1949 (2010), in which the Supreme Court upheld a facial challenge to 18 U.S.C. § 4248, a federal civil commitment statute, on the grounds that it violated the Necessary and Proper Clause.  The Court has carefully considered the parties' arguments regarding the application of *Comstock* to the circumstances of this case.  For reasons previously set forth in this Order, the Court finds that Section 1343 is not unconstitutional as applied to the facts of this case.

For each of the foregoing reasons, the Court DENIES Jinian's renewed motion for judgment of acquittal.

### C.    Motion for a New Trial.

Jinian moves for a new trial on the bassis that even if the evidence was sufficient to convict in the abstract, the case is "sufficiently close on all fronts, especially as to the jurisdictional issue, that a new trial is warranted."  (Docket No. 295, Motion for New Trial ("New Trial Mot.") at 1:13-18.)  He also moves for a new trial on the basis that the Court improperly admitted evidence that should have been excluded under Federal Rule of Evidence 404(b) or 403.  Finally, as set forth above, the Court shall analyze Jinian's *mens rea* argument under the rubric of Rule 33.

### 1.    Applicable Legal Standard.

United States District Court

For the Northern District of California

Pursuant to Rule 33, a "court may vacate any judgment and grant a new trial if the interests of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for a judgment of acquittal." *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2011) (quoting *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)). Thus, on a Rule 33 motion, a court need not view the evidence in the light most favorable to the government. Rather, a court is free to weigh the evidence and evaluate for itself the credibility of witnesses. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000); *Alston*, 974 F.2d at 1211. By the plain terms of Rule 33, however, this Court's focus must be whether failing to grant a new trial would result in manifest injustice.

> **2.      Analysis.**

>> **a.      The sufficiency of the evidence argument.**

Jinian's first argument is that the evidence in this case was sufficiently close that the Court should grant him a new trial. The Court has considered Jinian's arguments under the standards of Rule 33, and it concludes that the evidence does not "'preponderate[] sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211-12 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

>> **b.      The *mens rea* argument.**

Prior to trial, Jinian argued that the Court should instruct the jury that "one causes the use of interstate wire communications when one knows that interstate wire communications will be used in the ordinary course of business or when one can reasonably foresee such use." (Docket No. 148 (Memorandum re Disputed Instructions 44 & 45 at 3:5-6).) The parties engaged in extensive briefing on the issue, and the Court considered and rejected Jinian's arguments. Jinian urges the Court to reconsider its decision in light of *Fowler v. United States*, 131 S.Ct. 2045 (2011).

In *Fowler*, the defendant shot and killed a local police officer while discussing plans to rob a bank. He was charged and convicted for a violation of the federal witness tampering

United States District Court

For the Northern District of California

1  statute, which prohibits, *inter alia*, killing "another person, with intent to ... prevent the

2  communication by any person to a law enforcement officer ... of the United States" of

3  "information relating to the ... possible commission of a Federal offense."  18 U.S.C. §

4  1512(a)(1)(C).  However, Section 1512 also provides that "no state of mind need be proved

5  with respect to the circumstance that ... the law enforcement officer is an officer or employee of

6  the Federal Government."  *Id.* § 1512(g)(2).

7         The defendant argued that the evidence was not sufficient to show that he intended to

8  kill the victim to prevent him from communicating with a federal officer.  The issue presented

9  to the Supreme Court was the requisite standard of proof to show a jurisdictional nexus in

10 circumstances where a defendant may only have had a intent to kill a person to prevent a

11 communication with law enforcement officers in general.  Although the statute requires a

12 specific intent to prevent a communication to a federal officer, the Court noted that "we cannot

13 insist that the defendant have had some general thought about federal officers in mind, because

14 the statute says that 'no state of mind need to proved' in respect to the federal nature of the

15 communication's recipient."  *Id.* at 2050 (quoting 18 U.S.C. § 1512(g)).

16        The Supreme Court reasoned that to avoid "extending the scope of this federal statute

17 well beyond the primarily federal area that Congress had in mind," it could not be read to

18 "excuse the Government from proving *something* about the hypothetical communication with

19 federal officers."  *Id.* at 2051 (emphasis in original).  However, it rejected the "possible" or

20 "potential" standard adopted by the court of appeals.  Rather, the Court held that where a

21 defendant kills a person with the general intent to prevent communication with a law

22 enforcement officer, "that intent includes an intent to prevent communications with *federal* law

23 enforcement officers only if it is reasonably likely under the circumstances that ... at least one of

24 the relevant communications would have been made to a federal officer."  *Id.* at 2052 (emphasis

25 in original); *see also id.* ("Government must show that the likelihood of communication to a

26 federal officer was more than remote, outlandish, or simply hypothetical").

27        By its plain language, the intent element of Section 1343 is linked only to the scheme to

28 defraud.  *See* 18 U.S.C. § 1343; *Pelisamen*, 641 F.3d at 409 & n.7; *Garlick*, 240 F.3d at 792.  In

12

United States District Court

For the Northern District of California

1    addition, it is well established that a defendant need not intend that a wire communication be

2    used, it is sufficient if he or she causes a wire communication in interstate commerce to be used

3    to further the scheme.  *See, e.g., Garlick*, 241 F.3d at 794 ("'One causes use of ... wire

4    communications where such use can be reasonably foreseen, *even though not specifically*

5    *intended*.'") (emphasis added).  Jinian argues that in order to avoid extending the wire fraud

6    statute beyond its federal scope, the Court should apply the Supreme Court's reasoning from

7    *Fowler* to require that the Government prove that a defendant would know or could reasonably

8    likely not only that a communication would be transmitted by wire but that it would be

9    communicated by interstate wires.

10          The flaw in Jinian's analogy is that in *Fowler* the Supreme Court did not require proof

11   that the defendant *knew* it would be reasonably likely that a communications would have been

12   made to a federal law enforcement officer.  Indeed, such a conclusion would seem to conflict

13   with Section 1512(g).  Rather, the Court held that it was sufficient for the Government to prove

14   facts showing that it was reasonably likely that a communication would be made.  *Fowler*, 131

15   S. Ct. at 2052-53.  Accordingly, the Court finds no basis to revisit its ruling on this issue in light

16   of *Fowler.*

17               **c.     Evidentiary Issues.**

18          Jinian also moves for a new trial on the basis that the Court improperly admitted

19   testimony from Kevin Horio.  Prior to trial, the Court granted Jinian's motion in limine to

20   exclude evidence that Jinian had not repaid Horio for a loan on behalf of Horio's company,

21   Dimensia, Inc.  The Court permitted the Government to elicit this testimony on redirect, after

22   Jinian attempted to impeach Horio about allegedly inconsistent statements he made to one of

23   Jinian's attorneys.[8]  (*See* Docket No. 297 (5/17/11 Tr. (Horio Testimony at 14:4-15:1, 20:1-2,

24   45:2-11, 72:10-76:6).)  The Court has reviewed the testimony at issue, and it concludes that the

25

26   _____

27          [8]     The Court initially sustained the Government's objections to this testimony.
     After a conference with counsel, the Court concluded that it would permit Jinian to attempt
     to impeach Horio with the prior inconsistent statements.  However, the Court also expressly
28   advised counsel that, if he intended to pursue his questions, it would permit Horio to explain
     the inconsistencies on redirect examination.  (*Id.* at 30:18-34:3.)

1    Government redirect examination of Horio about the circumstances under which he made the

2    statements to Jinian's attorney was proper.

3          The Court cannot conclude that failure to grant a new trial based on the admission of

4    this evidence would amount to a miscarriage of justice.

5          Jinian also argues that the Court should not have admitted testimony from Donna

6    Schmidt regarding personal expenses that were improperly allocated as business expenses, on

7    the basis that Ms. Schmidt did not have personal knowledge of the facts and essentially testified

8    as a hearsay witness.[9]  Jinian raised these objections at trial, and the Court overruled them.

9    (*See, e.g.*, Balogh Decl., Ex. B (5/23/11 Tr. (Schmidt Testimony at 44:1-5).)  The Court finds

10   that Schmidt established a sufficient factual basis to support her testimony that the disputed

11   expenses were personal rather than business related.  (*See, e.g., id.* at 43:1-9, 49:9-55:5.)

12   Accordingly, the Court cannot conclude that failure to grant a new trial based on the admission

13   of this evidence would amount to a miscarriage of justice.

14         Finally, the Court has considered each of Jinian's arguments and when the Court

15   considers the alleged errors cumulatively, it finds that failing to grant a new trial would not

16   result in manifest injustice.

17         For each of the foregoing reasons, Jinian's motion for a new trial is DENIED.

18                                   **CONCLUSION**

19         By this Order, the Court DENIES each of Jinian's post-trial motions.  The parties shall

20   appear as scheduled for Judgment and Sentencing on October 27, 2011 at 2:00 p.m.

21         **IT IS SO ORDERED.**

22   Dated: October 24, 2011                              _____

23                                          JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE

24

25

26

27        [9]      Jinian also objected to the admission of this evidence under Federal Rules of
     Evidence 403 and 404(b), and he maintains those objections.  (New Trial Mot. at 4:9-11.)
28   For reasons previously stated by the Court, Jinian's objections under Rule 403 and 404(b) are
     overruled.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28